UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL A. MARAVILLAS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No.  2:23-cv-00782-CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  The parties have consented to magistrate judge jurisdiction.  For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1990, applied on March 13, 2020 for DIB and SSI, alleging disability beginning January 15, 2020.  Administrative Transcript ("AT") 23, 31.  Plaintiff alleged he was unable to work due to Tourette's Syndrome, PTSD, personality disorder, schizophrenia, and ADHD.  AT 75.  In a decision dated December 10, 2021, the ALJ determined that plaintiff was

not disabled.[1]  AT 23-31.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2025.
>
> 2. The claimant has not engaged in substantial gainful activity since January 15, 2020, the alleged onset date.
>
> 3. The claimant has the following severe impairments: schizoaffective disorder, posttraumatic stress disorder, and bipolar disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

    finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant requires work with simple instructions, involving simple tasks.  He is capable of only brief, superficial interactions with the public, in the work setting.  He requires only occasional predictable changes in the work setting.

    6.  The claimant is unable to perform any past relevant work.

    7.  The claimant was born [in] 1990 and was 29 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

    8.  The claimant has at least a high-school education.

    9.  Transferability of job skills is not material to the determination of disability[.]

    10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[2]

    11.  The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2020, through the date of this decision.

AT 25-32.

ISSUES PRESENTED

  Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) the ALJ erred in discounting plaintiff's symptom allegations; (2) the Appeals Council did not properly evaluate a new and material medical opinion submitted by plaintiff; (3) the ALJ erred in evaluating the opinion of the consultative psychological examiner; and (4) the ALJ erred in evaluating the prior administrative medical findings of the State agency physicians.

LEGAL STANDARDS

  The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

---

[2] Relying on vocational expert (VE) testimony, the ALJ found that plaintiff could perform jobs such as packer, order filler, and machine tender.  AT 31.

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinions

Plaintiff claims that the ALJ erred by failing to account for moderate mental limitations opined by the psychological examiner, without explaining why he discounted these limitations in formulating the RFC. Defendant contends that the ALJ did not discount them, and that the RFC adequately incorporates these limitations.

On April 13, 2021, Dr. Michelina Regazzi conducted a psychological consultative examination of plaintiff. AT 851-857. She noted that he had been "admitted to psychiatric facilities several times."[3] AT 852. Dr. Regazzi also noted plaintiff's statement that he had made

---

[3] In his decision, the ALJ noted that, in May 2020, plaintiff underwent a three-day psychiatric hospitalization for suicidal ideation. AT 28. From June 5, 2020 through June 26, 2020, he followed up with treatment in a "partial hospitalization" program. AT 28-29. In July 2020, he underwent an additional four-day psychiatric hospitalization. AT 29. In October 2020, he "underwent a short hospitalization to stabilize symptoms in the context of medication noncompliance." AT 29.

"suicidal gestures" and had a "reported history of paranoia," though he denied "current thoughts of harm toward self or others." AT 852-53. Dr. Regazzi diagnosed plaintiff with ADHD, Unspecified Anxiety Disorder, Unspecified Psychotic Disorder, and R/O Cannabis Use Disorder. AT 856. As to work-related abilities, Dr. Regazzi found plaintiff unimpaired in performing detailed and complex tasks, maintaining regular workplace attendance, and accepting instructions from supervisors. AT 857. She found him mildly impaired in the ability to perform work activities without special supervision and the ability to interact with coworkers and the public. AT 857. Dr. Regazzi found plaintiff moderately impaired in the "ability to complete a normal workday or workweek without interruptions resulting from [his] psychiatric condition" and the "ability to deal with the usual stresses encountered in competitive work environment." AT 857.

The ALJ summarized Dr. Regazzi's opinion, then continued:

> State agency psychiatric consultant, T. Brody, Psy.D., opined the claimant is capable of simple tasks with superficial public interaction and predictable work changes.[4] State agency psychiatric consultant, K. Morris, Psy.D., affirmed the assessment.[5]
>
> These opinions [including Dr. Regazzi's] are persuasive, as they are largely consistent with the above residual functional capacity. Their opinions are supported by Dr. Regazzi's observations and testing and State agency's evaluation of the medical record. They are consistent with treatment reports and objective evidence, such as intermittent mood instability and cognitive difficulties. [Record citations omitted.] I find State agency's opinions more persuasive than Dr. Regazzi (in areas of conflict), as their opinion considers a comprehensive review of the record.

AT 30.

The resulting RFC limited plaintiff to "work with simple instructions, involving simple tasks"; "brief, superficial interaction with [the] public"; and "only occasional predictable changes in the work setting." AT 27.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one

---

[4] Citing AT 75-98.
[5] Citing AT 103-140.

5

1  medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also
2  Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally
3  ignore a treating doctor and his or her notes, without even mentioning them").

4      For disability applications filed on or after March 27, 2017, the Commissioner revised the
5  rules for the evaluation of medical evidence at the administrative level. See Revisions to Rules
6  Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Because
7  plaintiff filed his application in 2020, it is subject to the new rules for the evaluation of medical
8  evidence.

9      The revised rules provide that adjudicators for the Social Security Administration,
10 including ALJs, evaluate medical opinions according to the following factors: supportability;
11 consistency; relationship with the claimant; specialization; and other factors such as the medical
12 source's familiarity with other evidence in the record or with disability program requirements. 20
13 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and
14 consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or
15 finding is supported by relevant objective medical evidence and the medical source's supporting
16 explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or
17 finding is consistent with evidence from other medical sources and non-medical sources,
18 including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will
19 articulate how he considered the most important factors of supportability and consistency, but an
20 explanation for the remaining factors is not required except when deciding among differing yet
21 equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new
22 regulations "still require that the ALJ provide a coherent explanation of his reasoning" and
23 establish "a minimum level of articulation to be provided in determinations and decisions, in
24 order to provide sufficient rationale for a reviewing adjudicator or court." Sam-Chankhiao v.
25 Kijakazi, 2:20-cv-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022), citing Hardy v.
26 Commissioner, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).

27   Here, plaintiff argues that the RFC did not account for Dr. Regazzi's opinion that he was
28 moderately limited in his abilities to "complete a normal workday or workweek without

6

interruptions resulting from [his] psychiatric condition" and "deal with the usual stresses encountered in competitive work environment." The ALJ did not discuss the specific moderate limitations opined by Dr. Regazzi. From the ALJ's brief discussion of multiple medical opinions, it is not clear whether he rejected the moderate limitations opined by Dr. Regazzi, or not.

Defendant asserts that the RFC did incorporate the moderate limitations opined by Dr. Regazzi. Defendant points out that State agency physicians Drs. Brode and Morris also found plaintiff moderately limited in these areas[6], yet found him capable of simple tasks with superficial public interaction and predictable work changes. Defendant argues that the court should find "that the ALJ properly synthesized and translated Dr. Regazzi's assessed limitations into" the RFC, along with similar, somewhat more specific opinion evidence. ECF No. 16 at 19.

In Nambi v. Kijakazi, 2023 WL 2743577, *1 (N.D. Cal. March 30, 2023), the State agency consulting psychiatrist found the plaintiff moderately impaired in the ability to complete a normal workday and workweek without interruptions from psychological symptoms, among other moderate limitations. The mental RFC limited him to simple, routine tasks and occasional interaction with the public. Id. The Commissioner argued that the RFC included the opined moderate limitations; however, the court found that the RFC did "not account for [the psychiatrist's] findings of moderate limitations in Nambi's abilities to complete a workday or workweek," and other moderate limitations. Id. at *2. "The ALJ was required to either include these limitations in [Nambi's] RFC assessment or provide legally sufficient reasons for rejecting them," the court concluded. Id., citing Warren v. Saul, 2021 WL 259435, at *6 (C.D. Cal. Jan. 26, 2021). "The ALJ did neither and that was error." Id. See also Morinskey v. Astrue, 458 Fed. Appx. 640, 641 (9th Cir. 2011) (ALJ erred by not making "findings setting forth specific, legitimate reasons for rejecting . . . opinion that Morinskey's abilities to . . . complete a normal work day or workweek without interruption from his bipolar disorder were moderately impaired"). "While moderate limitations do not necessarily indicate that Plaintiff is unable to

---

[6] Citing AT 83-84 (Dr. Brode opines moderate limitations in ability to complete normal workday/workweek without interruptions from psychological symptoms, and other moderate mental limitations); AT 121-23 (Dr. Morris opines same).

7

perform all work activity, the ALJ was required to either include these limitations in Plaintiff's RFC assessment or provide legally sufficient reasons for rejecting them." Warren, 2021 WL 259435, *6.

In this case, plaintiff was hospitalized four times for mental symptoms during the two-year period at issue. Three doctors opined that he was moderately limited in the ability to "complete a normal workday or workweek without interruptions resulting from [his] psychiatric condition" and his ability to cope with normal workplace stresses. Yet, the ALJ did not explain whether he credited these portions of Dr. Regazzi's opinion, and the supportability and consistency factors as to these specific opined limitations were never addressed. Insofar as the ALJ credited the state Agency doctors' findings instead of Dr. Regazzi's, he simply noted that "in areas of conflict" the state Agency doctors' "opinion considers a comprehensive review of the record." But if this generality were enough of a reason, every State agency opinion (based on a review of the longitudinal record) would be entitled to more credit than every consultative exam. The ALJ's failure to explain his reasoning as to Dr. Regazzi's opined moderate limitations was error.

At the hearing, the VE testified that if a person with plaintiff's RFC missed even two days of work a month, "there would be no work." AT 67-68. Thus, the error was harmful, and plaintiff is entitled to summary judgment on this claim.[7]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the

---

[7] The court does not reach the remaining claims.

8

"credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

Accordingly, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment (ECF No. 11) is granted;
2. The Commissioner's cross motion for summary judgment (ECF No. 16) is denied;
3. The Clerk of Court shall enter judgment for plaintiff; and
4. This matter is remanded for further administrative proceedings consistent with this order.

Dated: September 26, 2024

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/marv0782.bothdibsssi.ckd